**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel S. Pina,<br><br>        Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>        Respondents. | No. CV-12-01499-PHX-SRB (SPL)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

    Petitioner Daniel S. Pina, who is confined in the Arizona State Prison Complex - Eyman, Rynning Unit, in Florence, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)[1]

**BACKGROUND**

    On November 9, 2007, Petitioner Daniel Pina was indicted and charged in Maricopa County Superior Court, Case No. CR 2007-170470-001, with two counts of burglary in the second degree (Counts 1 and 2), two counts of aggravated assault (Count 3 and 4), unlawful use of means of transportation (Count 5), and burglary in the third degree (Count 6). (Doc. 10-1 at 5, 16.) Aggravating factors and prior felony convictions were alleged. On August 22, 2008, Petitioner was found guilty by a jury of the lesser-

---

[1] The Court granted Petitioner's Application to Proceed *In Forma Pauperis* on August 7, 2012. (Doc. 6.)

included offense of criminal trespass on Count 2, of both counts of aggravated assault (Counts 3 and 4), and burglary in the third degree (Count 6). (Doc. 10-1 at 6, 26). The jury further found that the counts of aggravated assault were non-dangerous offenses. (Doc. 10-1 at 25.) On January 7, 2009, the trial court found that Petitioner had two prior felony offenses and sentenced him to the presumptive term on all four counts. Petitioner was sentenced to serve concurrent sentences of 3.75 years for criminal trespass, 11.25 for each aggravated assault conviction, and 10 years for burglary in the third degree, with 435 days of presentence incarceration credit. (Doc. 10-1 at 6, 27.)

The facts giving rise to Petitioner's convictions, summarized by the Arizona Court of Appeals, are as follows:

> [Petitioner] met J.A. in 2001. The two of them had a "fling" that resulted in the birth of a daughter. After the child was born, J.A. married another man and [Petitioner] saw J.A. only "[n]ow and again," when he gave her money for their daughter.
>
> On October 30, 2007, J.A. lived in a Chandler home with her four children—her daughter with [Petitioner] and three children from her now-dissolved marriage. According to J.A., [Petitioner] did not have keys to her home. Between the evening of October 30 and the morning of October 31, J.A. and a new boy-friend, A.G., encountered [Petitioner] three times, resulting in the charges in this case.
>
> Between 7:00 and 8:00 p.m., [Petitioner] arrived at J.A.'s house and entered uninvited. J.A. stopped him from entering her bedroom and called police, at which point Appellant left. Later that night, however, between 10:00 p.m. and midnight, Appellant returned to J.A.'s home with a friend. He entered her bedroom while she and A.G. were sleeping and shouted, "I caught you, I caught you, you cheated." [Petitioner] had a jack pole in his hands, which he swung around and used to threaten J.A. and A.G. J.A. managed to call the police, and [Petitioner] and his friend left.
>
> After [Petitioner] left, J.A. noticed that, although A.G.'s car was still in the driveway, his car keys were missing. A Mazda that had been parked next to A.G.'s car in the driveway was also missing. A.G.'s glove compartment was open and his trumpet and backpack were gone.
>
> [Petitioner] returned to J.A.'s house between 2:00 and 3:00 a.m., apologized to A.G., and returned his car keys. Officer McClain, who had responded to the earlier call and spoken

> with [Petitioner] by phone, responded to another telephone call from the house. When he arrived at the house, [Petitioner] was sitting in his employer's tow truck, shaking hands with A.G. Officer McClain initiated a stop. When he searched the car, Officer McClain found a "pole for a jack," at which point he arrested [Petitioner]. Police found the missing Mazda in Tempe and A.G. recovered his missing personal items.
>
> At trial, [Petitioner] claimed that he and J.A. were engaged to be married, but that he suspected she was cheating on him. He went to her home on October 30, hoping to "catch her in the act." While leaving her home, he accidentally took A.G.'s keys, which he was returning when police stopped him. He testified that he never entered A.G.'s car or took anything from it and did not use a jack pole to threaten either J.A. or A.G.

(Doc. 10-1 at 3-5).[2]

On January 26, 2009, Petitioner filed a timely Notice of Appeal in the Arizona Court of Appeals. (Doc. 10-1 at 27.) Petitioner's counsel filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), in which he asserted he found no arguable question of law that was not frivolous, and requested the court to search the record for fundamental error. (Doc. 10-1, Exh. B.) On October 5, 2009, Petitioner filed a *pro se* supplemental opening brief. (Doc. 10-1, Exh. C.) After briefing was completed, the Arizona Court of Appeals issued a Memorandum Decision on January 19, 2010, in which it affirmed Petitioner's convictions and sentences. (Doc. 10-1, Exh. A.) Petitioner's subsequent Petition for Review to the Arizona Supreme Court was summarily denied on June 15, 2010. (Doc. 10-2, Exh. D.) Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. (Doc. 1 at 3.)

On July 7, 2010, Petitioner filed a Notice of Post-Conviction Relief in the Maricopa County Superior Court, followed by a *pro se* Petition for Post-Conviction Relief on or about December 3, 2010. (Doc. 10-2, Exh. E and F.) In a Minute Entry filed on August 30, 2011, the trial court dismissed the post-conviction petition. (Doc. 10-2,

---

[2] Petitioner does not challenge the court's recitation of the facts. Therefore, the Court presumes the state court's factual determinations are correct because Petitioner has not "rebut[ed] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

- 3 -

Exh I.) Petitioner did not seek review of the trial court's decision. (Doc. 1 at 5.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 12, 2012. (Doc. 1). Respondents filed a Limited Answer on September 17, 2012. (Doc. 10). No Reply has been filed.

## DISCUSSION

In Ground One of the habeas petition, Petitioner claims that there was a misapplication of state statutes which resulted in an inconsistent jury verdict. In Ground Two, Petitioner claims that he was deprived of a fair trial by: (1) the State's late disclosure of a police report supplement, and (2) the State's late disclosure of an exculpatory forensic examination report. In Ground Three, Petitioner alleges that the trial court exercised an abuse of discretion by: (1) denying the motion for sanctions made by defense counsel during trial; (2) failing to issue a ruling on the State's motion in limine at trial; and (3) unlawfully sentencing him. Lastly, in Ground Four, Petitioner claims that he was deprived of a fair trial because he received ineffective of assistance of counsel. In their Answer, Respondents argue that Petitioner failed to exhaust his state-court remedies and that his claims are procedurally barred. Respondents also argue in the alternative that his claims are not federally cognizable.

### I.      Non-Cognizable Claim

To be eligible for federal habeas corpus relief, a state prisoner must establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas corpus relief is not available for errors of state law. Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Federal courts accept a state court's interpretation of state law "and alleged errors in the application of state law are not cognizable in federal habeas corpus." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). It is not the policy of the federal courts to re-examine state court determinations of state law questions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Federal courts are without jurisdiction to review State court applications of state procedural rules. Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1998). Moreover, a petitioner may not "transform a

state-law issue into a federal one merely by asserting a violation of due process." Langford, 110 F.3d at 1389. "[T]he Supreme Court has long settled that the Fourteenth Amendment does not assure immunity from judicial error or uniformity of judicial decisions." Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir. 2006).

### A.     Ground One

In Ground One, Petitioner challenges his aggravated assault convictions by arguing that there was a misapplication of state statutes. Petitioner contends that the jury's findings of guilty on these charges are inconsistent with the finding that they were non-dangerous offenses. Plaintiff asserts that on one hand his assault offenses were aggravated because they involved the use of a deadly weapon, while on the other, his offenses were found non-dangerous because they did not involve the use of a deadly weapon. In rejecting this claim on direct appeal, the Arizona Court of Appeals reasoned:

> [A] finding of guilt as to the aggravated assault charge alone does not include a finding that the offense involved the use of a dangerous instrument or a deadly weapon. Section 13–604(P) (2001) provides for additional penalties if the "dangerous nature of the felony is ... found by the trier of fact." Therefore, "[t]he fact that the proof showed the use of a weapon does not satisfy the statutory requirement that the element of the dangerous nature of the felony be charged and be found to exist by the trier of fact." State v. Parker, 128 Ariz. 97, 99, 624 P.2d 294, 296 (1981). As trier of fact, the statutory scheme requires the jury to make a separate finding of dangerousness with respect to the aggravated assault charges. We therefore find no reversible error or inconsistency in the instructions to the jury requiring a separate dangerousness finding on the aggravated assault charges.

(Doc. 10-1 at 8-9.) [3]

Petitioner's instant claim turns solely on the interpretation and application of state law, A.R.S. §§ 13-604 and 13-1204, and is therefore not federally cognizable. See Langford, 110 F.3d at 1389. Petitioner does not distinguish any federal basis for his claim, and none of his allegations transform his state-law claim into a federal one.

---

[3]     On post-conviction review, the trial court found this claim was precluded because it had been fully adjudicated on its merits on appeal. (Doc. 10-2 at 46.)

Because Petitioner's classification claim constitutes a challenge to the application of state law, it is not cognizable on federal habeas corpus review. Accordingly, the Court will recommend that Ground One be denied.

## II.     Exhaustion and Procedural Default

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

First, a petitioner must present his claims to the state's highest court in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 845. In Arizona, a petitioner must present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

In addition to presenting his claims to the proper court, a state prisoner must fairly present those claims to the state court to satisfy the exhaustion requirement. A claim has been "fairly presented" if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73 (9th Cir.1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). "Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d 904

(9th Cir. 2001). The habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. Tamalini v. Stewart, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. Lyons v. Crawford, 232 F.3d at 669; Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. Gray v. Netherland, 518 U.S. 152, 162-63 (1996). It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. Baldwin v. Reese, 541 U.S. 27, 28 (2004). A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. Baldwin, 541 U.S. at 27. "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005).

A habeas petitioner's claims may be procedurally defaulted and precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court, but found by that court to be defaulted on state procedural grounds such as waiver or preclusion. Beard v. Kindler, 558 U.S. 53 (2009); Ylst v. Nunnemaker, 501 U.S. 797, 802-05 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Arizona courts have been consistent in their application of procedural default rules. Stewart v. Smith, 536 U.S. 856, 860 (2002) (holding that Ariz.R.Crim.P. 32.2(a) is an adequate and independent procedural bar); Cook v. Schriro, 538 F.3d 1000, 1026 (9th Cir. 2008) (stating that "[p]reclusion of issues for failure to present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law because they do not depend upon a federal constitutional ruling on the merits.'") (footnote omitted) (quoting Smith, 536 U.S. at

860); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998)).  Second, a claim may be procedurally defaulted in federal court if petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state courts' procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. Teague v. Lane, 489 U.S. 288, 297-99 (1989); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); State v. Mata, 916 P.2d 1035, 1048-53 (Ariz. 1996); Ariz.R.Crim.P. 32.2(a) & (b); 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. Beaty v. Stewart, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. Coleman v. Thompson, 501 U.S. at 732.

A federal court may review the merits of a procedurally defaulted claim if the petitioner can demonstrate cause for his noncompliance and actual prejudice, or that a miscarriage of justice would result. To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. Dretke v. Haley, 541 U.S. 386, 393-94 (2004); Hughes v. Idaho State Board of Corrections, 800 F.2d 905, 907-08 (9th Cir. 1986). "Prejudice" is actual harm resulting from the constitutional violation or error. Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984). See also United States v. Frady, 456 U.S. 152, 170 (1982); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish cause, the court need not reach the prejudice prong. Alternatively, a federal court may also review the merits of a procedurally defaulted claim if the petitioner demonstrates that the failure to consider the merits of his claim will result in a

"fundamental miscarriage of justice." Schlup v. Delo, 513 U.S. 298, 327 (1995). A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. See also Dretke, 541 U.S. at 393 (to satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged).

### A.   Ground Two (*Forensic Examination Report*)

In Ground Two, Petitioner argues that the State committed a Brady violation which deprived him of his right to a fair trial.[4] Petitioner argues that he was denied exculpatory evidence at trial which consisted of a forensic examination report of latent print comparisons of prints lifted at the crime scene with his fingerprints. (See Doc. 1-2 at 14-15.) Petitioner asserts that although this report was disclosed on August 20, 2008, no testimony regarding its analysis was presented at trial.

In the instant case, Petitioner did not "fairly present" his Brady claim to the Arizona Court of Appeals on direct appeal. While Petitioner recited facts regarding the August 20, 2008 late disclosure (Doc. 10-1 at 38-39), he did not present a claim of either state or federal law based upon those facts. See Lyons, 232 F.3d at 668 (even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts…"). Rather, Petitioner raised a Brady claim for the first time to the Superior Court on post-conviction review. Petitioner also did not seek review of the denial of the petition for post-conviction relief to the Arizona Court of Appeals. Petitioner's time to appeal that

---

[4] In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). In order to prevail on a Brady claim, a defendant must demonstrate that: (1) the evidence at issue is favorable, either because it is exculpatory or because it is impeaching; (2) such evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice resulted. Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Banks v. Dretke, 540 U.S. 668, 691 (2004); Kyles v. Whitley, 514 U.S. 419, 433 (1995).

decision has expired, see Ariz. R.Crim. P. 32.9(c) (stating that a party has thirty days from the trial court's ruling in which to seek appellate review), and a return to state court would otherwise be futile under Arizona's procedural rules. The time has passed to seek post-conviction relief in state court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure, and Petitioner has not shown that any of the exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him. As a result, Petitioner's Brady claim is technically exhausted and procedurally defaulted.

Petitioner has not filed a reply nor has otherwise presented cause for his failure to exhaust this claim. The record does not reflect that the State's actions constitute "cause" for Petitioner's failure to prosecute this claim on direct appeal. See Banks, 540 U.S. at 691 (finding that the second Brady factor may also establish "cause" for any failure to develop a Brady claim in state court.) Petitioner contends only that this evidence was untimely disclosed. Although Petitioner argues that testimony regarding the forensic examination report was not ultimately presented at trial by defense counsel, he does not contend that the report was, in fact, "suppressed." Consequently, this evidence was known to the Petitioner at the time of his conviction, and therefore its untimely disclosure did not preclude him from raising a Brady claim on direct appeal.

Furthermore, the record does not demonstrate that review of the merits of this claim is necessary to prevent a fundamental miscarriage of justice. In state post-conviction relief briefing, Petitioner claims that the untimely disclosed report contained analysis of fingerprints taken from the burglarized vehicle. (Doc. 10-2 37-40.) He argues that expert testimony on the report's conclusions would have shown that the fingerprints found on the vehicle did not belong to Petitioner, and changed the outcome of the jury's verdict.[5] If accepting Petitioner's characterization of available expert testimony, the Court nonetheless finds that it does not constitute clear and convincing evidence that no

---

[5] The forensic examination report states that the latent prints from the house "window screen" were identified as belonging to Petitioner. Either "[n]o identifications were effected on" or "inked major case prints [were] needed to complete the comparison to" the vehicle latent prints. (Doc. 1-2 at 14.)

- 10 -

reasonable fact-finder could have found Petitioner guilty of the offense charged. See Dretke, 541 U.S. at 393; Wildman v. Johnson, 261 F.3d 832, 842–43 (9th Cir. 2001). Here, the jury found sufficient evidence to support Petitioner's burglary conviction without evidence that his fingerprints (or no fingerprints) were found on the vehicle. An affirmative absence of Petitioner's fingerprints on the doors or windows of vehicle does not lend the conclusion that a reasonable fact-finder would have no alternative but find that Petitioner was absent from the scene of the event and innocent of the crime. The Court therefore concludes that Petitioner has not presented cause for his failure to exhaust, or that a miscarriage of justice would result to excuse the procedural default. Accordingly, the Court will recommend that this claim be denied.

### B.     Ground Three (*Motion in Limine* and *Unlawful Sentencing*)

In Ground Three, Petitioner argues that the trial court exercised an abuse of discretion when it failed to rule on the State's Motion in Limine. Petitioner asserts that on August 20, 2008, the State untimely disclosed a forensic examination report alongside a motion in limine to suppress its evidence. Defense counsel objected to the motion, but the trial court declined to issue a ruling, holding it in abeyance until the issue was raised again during trial. While Petitioner recited these facts on direct appeal, he did not present a claim of either state or federal law based on them. On state post-conviction review, Petitioner argued for the first time that his due process rights were violated when the trial judge failed to rule on the State's motion in limine and "to recognize the Brady material." (Doc. 10-2 at 19.) However, Petitioner did not seek review of the denial of the petition for post-conviction relief to the Arizona Court of Appeals. [6]

Additionally, in Ground Three, Petitioner alleges that the trial court exercised an abuse of discretion by unlawfully sentencing him. He argues that the trial court erred when it sentenced Petitioner on both counts of aggravated assault as a repeated offense.

---

[6] Furthermore, although Petitioner alleged on state post-conviction review that his due process rights were violated by the Court's "improper ruling" (Doc. 10-2 at 19), he does not raise that argument here nor does he develop any argument of how the trial court's treatment of the motion in limine violates his federal rights.

- 11 -

He contends that although they involved two victims, they occurred at the same time and Petitioner was neither charged nor convicted of a prior assault offense. Petitioner did not present this claim to either the Arizona Court of Appeals on direct appeal or to the Superior Court on post-conviction review.

Petitioner's time to appeal the Superior Court's denial of post-conviction relief has expired, see Ariz. R.Crim. P. 32.9(c) (stating that a party has thirty days from the trial court's ruling in which to seek appellate review), and a return to state court on either of these claims in Ground Three would be futile under Arizona's procedural rules. The time has passed to seek post-conviction relief in state court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure, and Petitioner has not shown that any of the exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him. As a result, these claims are technically exhausted and procedurally defaulted. Petitioner likewise fails to overcome the procedural bar. Petitioner has not presented cause for his failure to exhaust these claims, nor has he shown actual prejudice. Petitioner has also not demonstrated that a miscarriage of justice would result if these issues are not addressed. Accordingly, the Court will recommend that these claims be denied.

### C. Ground Four

Lastly, in Ground Four, Petitioner claims that he received ineffective of assistance of counsel which deprived him of his right to a fair trial. Petitioner argues that trial counsel was ineffective when he (1) failed to present the forensic examination report at trial, (2) failed to argue the inconsistencies in the final jury instructions, and (3) failed to properly address the State's late disclosures. In dismissing Petitioner's ineffective assistance of counsel claim on post-conviction review, the Arizona Court of Appeals found that Petitioner had not raised a colorable claim for relief. "The evidence of [Petitioner's] guilt for each of the offenses was strong, and none of his challenges to the conduct of trial or appellate counsel is sufficient to demonstrate deficiency of performance or a reasonable probability that the outcome of the case would have been different." (Doc. 10-2 at 46-47.)

While Petitioner presented his ineffective assistance of counsel claim to the Superior Court on post-conviction review, he did not seek review of the dismissal of the petition to the Arizona Court of Appeals. Petitioner's time to do so has expired. See Ariz. R.Crim. P. 32.9(c) (stating that a party has thirty days from the trial court's ruling in which to seek appellate review). Because Petitioner did not present this claim to the Arizona Court of Appeals and cannot do so now, the claim is technically exhausted and barred from federal habeas corpus review. See Roettgen v. Copeland, 33 F.3d 26, 38 (9th Cir. 1994). As reasoned above, Petitioner has failed to file a reply and has not otherwise presented a basis by which he may overcome the procedural default. Accordingly, the Court will recommend that Ground Four be denied.

### III.    AEDPA[7] Standard of Review

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). A federal court must accept the state court's factual findings unless they are objectively unreasonable. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. at 405-06. "A state court's decision can involve an 'unreasonable application' of Federal law if it either (1)

---

[7]    Antiterrorism and Effective Death Penalty Act of 1996. The AEDPA applies only to those cases that were filed after its effective date (April 24, 1996). See Lindh v. Murphy, 521 U.S. 320, 326-27 (1997).

- 13 -

correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).  Thus, the "unreasonable application" clause requires the state court's application of Supreme Court law to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011).

"Clearly established Federal law" in § 2254(d)(1) refers to the holdings of the Supreme Court's decisions (not dicta) in effect at the time the relevant state court decision is issued. Lockyer v. Andrade, 538 U.S. at 71-72.  "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court." Thaler v. Haynes, 130 S.Ct. 1171 (2010). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S.Ct. at 784.

**B.     Ground Two (*Police Report*) and Ground Three (*Motion for Sanctions*)**

In Ground Two, Petitioner claims that he was deprived of a fair trial by the State's late disclosure of a police report supplement. Petitioner alleges that on July 25, 2008, approximately one month before trial, the State disclosed a 16-page police report supplement, which required additional discovery to be conducted by defense. As a result of the late disclosure, defense counsel moved for sanctions. Petitioner also claims in

Ground Three of his habeas petition, that the trial court abused its discretion when it subsequently denied that motion for sanctions.

On direct appeal, Petitioner argued that "[t]he State's failure to provide the defense with a complete police report and mandatory discovery in timely disclosure [*sic*] has deprived [Petitioner]… due process under both Federal and State law." (Doc. 10-1 at 41.) "[A] criminal defendant has [a] due process right to have timely disclosure and present all relevant evidence in order to adequately access the case in light of any pending plea offers and to prepare for trial." (Doc. 10-1 at 43.) Moreover, "[t]he Court's error in ruling improper sanctions of this matter [*sic*] has further resulted in [a] violation of the [Petitioner's] rights under the Constitution."[8] (Id.) In rejecting these arguments, the Arizona Court of Appeals reasoned:

> During an interview with the county attorney and defense attorney, Officer McClain noticed that a supplement to his police report was missing. Due to computer system glitches at the Chandler Police Department, the supplement was lost. He was able to recover the supplement from his computer system, but the result was delayed disclosure. The court held a hearing on the matter after defense counsel filed a Motion for Sanctions Pursuant to Rule 15.7, but denied the motion when defense counsel acknowledged that "this late disclosure was not something intentionally done by the prosecution" or the officer. The trial court was willing to grant the defense additional time, if needed, but [Petitioner] was 'not interested in waiving time towards the last day in which to resolve this matter[.]' We find no reversible error or deprivation of [Petitioner's] due process rights in the trial court's handling of the State's inadvertent late disclosure.

(Doc. 10-1 at 7-8.)

Petitioner does not show that the Arizona Court of Appeal's decision was contrary to clearly established federal law or was objectively unreasonable. As addressed by the Court of Appeals, while there may have been a late disclosure of evidence, Petitioner was informed that he would be provided additional time to conduct discovery, which he

---

[8] The Superior Court precluded consideration of this claim on post-conviction review, finding that this claim had been fully adjudicated on the merits at trial and on direct appeal. (Doc. 10-2 at 46.)

declined to do. Here, Petitioner does not develop any argument of how the untimely disclosure of the police report supplement violated his due process rights or any other right under the Constitution or the laws of the United States. In so far as Petitioner may be construed to challenge whether the Court complied with Rule 15.7 of the Arizona Rules of Criminal Procedure, such argument is a question of state law and is not cognizable on federal habeas review. Because Petitioner has failed to satisfy the standard for habeas relief, the court will recommend that these claims be denied.

**IV.  Evidentiary Hearing**

Petitioner has requested that the court grant an evidentiary hearing on his claims. Based on the above analysis, the Court finds that Petitioner is not entitled to an evidentiary hearing because his petition fails to raise any colorable claims for relief. See Earp v. Ornoski, 431 F.3d 1158, 1167 (9th Cir. 2005).

**CONCLUSION**

Having determined that the claims presented in Petitioner's habeas petition are procedurally defaulted, not cognizable in a federal habeas action, or fail on the merits, the Court will recommend that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

Dated this 30th day of January, 2013.

*[signature]*
Honorable Steven P. Logan
United States Magistrate Judge